[Crim. No. 10148. Third Dist. Sept. 2, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBY DALE EARLS, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Antonia D. Radillo, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and Jana L. Tuton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**REGAN, Acting P. J.**—Defendant was convicted by a jury of robbery (Pen. Code, § 211) and of using a firearm in the commission of the crime (Pen. Code, § 12022.5). Defendant admitted a prior 1972 conviction under Penal Code section 211 and was sentenced accordingly.

On appeal, defendant raises issues of unlawful search and seizure and of entitlement to behavior (good time) and participation (work time) credit for presentence time spent in the county jail.

On December 1, 1977, defendant and another male, both wearing ski masks and carrying guns, entered the Capitol Federal Savings and Loan at 2717 Marconi Avenue in Sacramento County.

Defendant wore a navy blue ski mask with gold trim. The other man wore a lavender ski mask. Despite the blue ski mask, the bank tellers were able to tell that defendant was a young white male of average height and build. The man in the lavender mask waited near the door with a drawn gun while defendant robbed each teller.

During the robbery, one teller triggered the silent alarm system, which notified law enforcement agencies and activated the bank surveillance cameras. One camera took an exposed profile shot of defendant removing the navy blue ski mask as he exited the bank. The lavender ski mask was subsequently recovered in the immediate area of the savings and loan by an FBI agent.

Defendant was arrested on a Vehicle Code violation on the night of the robbery; at that time his clothing was confiscated. Several days later, defendant became a suspect in the robbery and his blue jeans were sent to the FBI laboratory for analysis. At trial, an expert witness testified that fibers from the lavender ski mask and also navy blue synthetic fibers were found on the blue jeans worn by defendant when arrested on the night of the robbery. An expert witness also testified to the similarity of defendant's features with those depicted in the surveillance photograph and the similarity of the "wear pattern" of defendant's blue jeans to those in the photograph.

I

Defendant contends the evidence obtained from the laboratory analysis of his blue jeans should have been excluded under the Fourth

Amendment since it was obtained without a search warrant and was the fruit of an unreasonable search and seizure. We disagree.

He assumes that since he was on searchable parole following a 1972 robbery conviction, a "search" (examination of his blue jeans) was undertaken pursuant to the parole search agreement and argues extensively that (a) the waiver allowing the search of property "under my control" was not applicable since the proper interpretation of the word "control" excluded his jeans in the jail property room, and (b) the search was primarily for "law enforcement" and not "parole administration" and was therefore not permissible under the parole consent and constituted a violation of his Fourth Amendment protection against unlawful search and seizure.

The argument is a fruitless exercise in semantics as it ignores the long-standing principle that a warrantless search of a person at booking and seizure of his property is reasonable. (*United States* v. *Edwards* (1974) 415 U.S. 800, 802-804 [39 L.Ed.2d 771, 774-776, 94 S.Ct. 1234]; *People* v. *Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606], revd. on other grounds *sub nom.*, *Ross* v. *California* (1968) 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850].)

It will be recalled that defendant's blue jeans were taken from him when he was booked in the Sacramento County jail. The jeans were retained with defendant's personal property until they were relinquished to the FBI laboratory for testing and analysis. The FBI was able to identify fibers from the ski mask on the jeans.

"'Once articles have lawfully fallen into the hands of the police they may examine them to see if they have been stolen, test them to see if they have been used in the commission of a crime, return them to the prisoner on his release, or preserve them for use as evidence at the time of trial. [Citation.] During their period of police custody an arrested person's personal effects, like his person itself, are subject to reasonable inspection, examination, and test.'" (*People* v. *Remiro* (1979) 89 Cal. App.3d 809, 835 [153 Cal.Rptr. 89], citing *People* v. *Rogers* (1966) 241 Cal.App.2d 384, 389-390 [50 Cal.Rptr. 559].)

Defendant's constitutional right against unlawful search and seizure was not impinged. The trial court correctly denied defendant's motion to suppress evidence.

## II

█ If otherwise eligible, defendant is entitled to behavior and participation credits attributable to his presentence time in local custody. (*People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874].) The computation of such conduct credits is, with respect to a defendant who has already been sentenced, an administrative function to be performed by the Department of Corrections. (*People* v. *Sage, supra*; see also Cal. Dept. of Corrections, Admin. Bull. No. 80/11.)

The judgment is affirmed.

Evans, J., and Finney, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 29, 1980. Bird, C. J., and Tobriner, J., were of the opinion that the petition should be granted.

*Assigned by the Chairperson of the Judicial Council.