Filed 9/18/13  P. v. Menjivar CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055008 |
| v. | (Super.Ct.No. FWV1101171) |
| JORGE JOSE MENJIVAR, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Sachs, Judge.  Affirmed.

Sarah A. Stockwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Jorge Jose Menjivar guilty of assault by means of force likely to produce great bodily injury. (Pen. Code, § 245, subd. (a)(1).)[1] Defendant thereafter admitted that he had suffered one prior serious or violent felony strike conviction. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) As a result, defendant was sentenced to a total term of six years in state prison with credit for time served. On appeal, defendant contends (1) the trial court erred in denying his request to instruct the jury on simple assault, and (2) he is entitled to additional presentence conduct credits under the most recent amendment to section 4019. We reject these contentions and affirm the judgment.

I

FACTUAL BACKGROUND

On April 29, 2011, at around 8:30 p.m., the victim was walking through an apartment complex looking for his younger brother's friend's bicycle, which had been stolen earlier that day, when he was approached by six to eight young adult men. The men, including defendant, surrounded the victim. One of the young men asked the victim in a firm voice what he was doing there. The victim did not respond and tried to get away, but the group surrounded him.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

One of the young men stated, "Let's get this white fool."[2]  Meanwhile, another young man hit the victim in the left side of the face, causing his left cheekbone to swell up.  After two or three punches by the assailants, the victim hit the ground face up, wherein the young men began to kick the victim.  The victim "tried to cover [his] head," but defendant gave a "hard kick" to his right temple.[3]  To protect his face, the victim rolled over and put his face in the ground.  The victim was unable to see his attackers, but he continued to feel kicks and hits to his ribs and back until law enforcement arrived.  Defendant was identified as one of the attackers and was eventually arrested.

The attack lasted about one minute, and the victim was punched and kicked approximately 15 to 20 times.  After the attack, the victim was disoriented and unable to maintain his balance, and suffered redness, swelling, bruising, and scratches.

II

DISCUSSION

A.    *Failure to Instruct on Simple Assault*

Defendant claims that the trial court erred in denying his request to instruct the jury on simple assault as a lesser included offense of assault by means to produce great bodily injury.  He argues that a rational jury could have found that when he kicked the victim, he did not employ force likely to produce great bodily injury.  He notes evidence

---

[2]  The victim testified that "most" of the assailants were African American, and "maybe three to four of them were Hispanic."

[3]  Defendant was wearing tennis shoes.

that he was wearing tennis shoes when he kicked the victim and that the victim "only" suffered "redness to the area."

A defendant has a constitutional right to have the jury determine every material issue presented by the evidence. (*People v. Benavides* (2005) 35 Cal.4th 69, 102.) The trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and necessary for the jury's understanding of the case, including lesser included offenses supported by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149, 162; *People v. Heard* (2003) 31 Cal.4th 946, 980-981.) The duty to instruct as to the lesser offense "arises if there is substantial evidence the defendant is guilty of the lesser offense, but not the charged offense. [Citation.] This standard requires instructions on a lesser included offense whenever ' "a jury composed of reasonable [persons] could . . . conclude []" ' that the lesser, but not the greater, offense was committed. [Citations.] In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*Breverman*, at p. 177.) The "purpose of the rule is to allow the jurors to convict of either the greater or the lesser offense where the evidence might support either." (*Id*. at p. 178, fn. 25.) Any doubt as to the sufficiency of the evidence requiring such an instruction should be resolved in favor of the defendant. (*People v. Lemus* (1988) 203 Cal.App.3d 470, 476.) We independently review the question of whether the trial court erred by failing to instruct on a lesser included offense. (*People v. Cook* (2006) 39 Cal.4th 566, 596.)

"Great bodily injury," within the meaning of section 245, means "bodily injury which is significant or substantial, not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.) Felonious assault in violation of section 245, subdivision (a), requires proof that a person was assaulted and that the assault was committed by the use of a deadly weapon or instrument or by means of force likely to produce great bodily injury. Felonious or aggravated assault is a general criminal intent crime, and requires proof only of an attempt to commit a violent injury upon the person of another. It does not require proof of an actual injury. (*People v. Griggs* (1989) 216 Cal.App.3d 734, 739-740.) Simple assault is an unlawful attempt, coupled with the present ability, to commit a violent injury on another person. (§ 240.) Simple assault is a lesser included offense of assault by means of force likely to produce great bodily injury. (§ 245, former subd. (a)(1); *People v. McDaniel* (2008) 159 Cal.App.4th 736, 747.)

Defendant argues that a simple assault instruction was required because the victim's injuries were minimal, focusing on the fact that defendant's "kick was not done with sufficient force to make the infliction of great bodily injury likely." We disagree. As discussed above, the evidence amply supported a finding that defendant's assault on the victim was an aggravated assault with force likely to cause great bodily injury and that defendant participated in that group assault. Accordingly, for the jury to have convicted defendant of only simple assault, it would have had to find he acted alone. There was no evidence to support this scenario. The defense was that defendant did not assault the victim at all and that "one kick to the head, by someone wearing a tennis shoe . . . is not force likely to produce great bodily injury." The evidence pointed to a joint,

5

coordinated six-to-eight-on-one assault, approved and orchestrated by the shot-caller, and carried out together by the group, including defendant. The group punched and kicked the victim approximately 15 to 20 times as he lay defenseless on the ground. The victim tried to protect himself from getting hit in the head, but in the midst of these circumstances, defendant gave a "hard kick" to the victim's head, a vulnerable portion of the body. Once the victim rolled over to protect his face, the assailants continued to kick the victim in the ribs and back area. Since no evidence supported an independent simple assault by defendant, the trial court had no obligation to instruct on simple assault.

Defendant's focus on the end result of the punches and kicks is misplaced. Section 245 prohibits an assault by means of force *likely* to produce great bodily injury, not the use of force which in fact *produces* such injury. Although the results of an assault may be highly probative of the amount of force used, they cannot be conclusive. (*People v. Muir* (1966) 244 Cal.App.2d 598, 604; *People v. Duke* (1985) 174 Cal.App.3d 296, 302-303 ["if hands, fists or feet, etc., are the means employed, the charge will normally be assault with force likely to produce great bodily injury"].) The force of the kick, the manner it was carried out, and the circumstances under which the victim was attacked show that defendant assaulted the victim by means of force likely to produce great bodily injury. It is settled that a court need not instruct on simple assault where the evidence is such as to make it clear that if the defendant is guilty at all, he is guilty of aggravated assault. (*People v. Berry* (1976) 18 Cal.3d 509, 519 [failure to instruct on lesser offense of simple assault not error because choking a victim to unconsciousness "necessarily indicates force likely to produce great bodily injury" and could not constitute mere

6

simple assault.].)  It is beyond reasonable dispute that the assault on the victim here was likely to produce great bodily injury, and it was not a simple assault.  In other words, the evidence did not support an instruction on simple assault, and therefore the failure to instruct was not error.  We therefore reject defendant's claim that in addition to an instruction on simple assault, the trial court should also have instructed the jury to give him the benefit of any doubt as to whether the offense was aggravated or simple assault.

Citing *People v. Racy* (2007) 148 Cal.App.4th 1327 (*Racy*), defendant states that "there is a reasonable chance that at least one juror's assessment of the case would have changed had the jury been properly instructed on the lesser included offense of simple assault."  Defendant's reliance on *Racy* is unavailing because the facts of that case are distinguishable from those here before us.  In reversing the defendant's felony elder abuse conviction on the ground the trial court prejudicially erred by failing to instruct the jury on the elements of misdemeanor elder abuse as a lesser included offense of felony elder abuse, the Court of Appeal noted that the victim "did not suffer great bodily harm during the incident, so the jury was left to draw inferences about whether the circumstances or conditions under which defendant inflicted physical pain or mental suffering were likely to produce great bodily harm or death."  (*Id.* at p. 1335.)  The *Racy* court explained that, "[f]rom the facts that appear in the record, it is reasonable the jury could have viewed [the victim] as a rather large man who was not likely to suffer great bodily injury or death during the incident despite his age and physical limitations.  [He] is six feet three inches tall and weighs 210 pounds and even after being 'zapped' with the stun gun and pursued by defendant, he was able to retreat to the bedroom, attempt to

make a 911 call, and lie down on the bed in a defensive position.  He emerged *unscathed* after being tipped and tripped." (*Id*. at p. 1336, italics added.)  Thus, the *Racy* court concluded, "there was a 'reasonable chance' defendant 'would have obtained a more favorable outcome' had the jury been instructed on misdemeanor elder abuse." (*Ibid*.)

*Racy* is factually distinguishable and the Court of Appeal's holding is limited to the facts and circumstances presented in that case.  Here, the victim was repeatedly attacked by six to eight young men, and was unable to retreat, call for help, or make an attempt to defend himself from the group attack.  In addition, in the midst of the attack, defendant kicked the victim in the head hard.  For reasons discussed, *ante*, we have concluded there is no substantial evidence from which a jury composed of reasonable persons could conclude that the force defendant used in assaulting the victim was force likely to produce great bodily injury, and thus the court had no duty to instruct the jury on the elements of simple assault.

In any event, it is not reasonably probable that defendant would have received a more favorable verdict if the simple assault instruction had been given.  (*People v. Rogers* (2006) 39 Cal.4th 826, 886; *People v. Watson* (1956) 46 Cal.2d 818, 836.)  A trial court's failure to instruct on all lesser included offenses that are supported by the evidence "is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome. [Citations.]" (*People v. Breverman*, *supra*, 19 Cal.4th at p. 165.)  We have reviewed the record and cannot conclude that any error affected the outcome.  This is because, as discussed *ante*, the evidence showed that defendant kicked the victim in the head with sufficient force to

8

likely cause great bodily injury while the victim lay defenseless on the ground and was being kicked by defendant's cohorts. In addition, during closing argument defense counsel argued that defendant was not the perpetrator of the kick; and that "one kick to the head, by someone wearing a tennis shoe, with no apparent injury . . . is not force likely to produce great bodily injury." Essentially, defense counsel argued that defendant's kick amounted to an assault, but not an assault likely to produce great bodily injury. However, the jury rejected this argument. Thus, we conclude that, even if the jury had been properly instructed to allow it to convict defendant of simple assault, it is not reasonably probable that it would have done so.

B.    *Custody Credits*

Defendant also argues that the trial court erred in failing to award him day-for-day credit for the time he served after amended section 4019's effective date, October 1, 2011, to the date he was sentenced, November 17, 2011. Defendant acknowledges the California Supreme Court's recent decision in *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*) held an earlier iteration of section 4019 was not fully retroactive and did not violate equal protection principles, but continues to maintain that under equal protection principles, he is entitled to day-for-day credit for the time he served from October 1, 2011 to November 17, 2011. As we explain *post*, he is incorrect.

A defendant is entitled to actual custody credit for "all days of custody" in county jail and residential treatment facilities, including partial days. (§ 2900.5, subd. (a), *People v. Smith* (1989) 211 Cal.App.3d 523, 526.) Section 4019 provides that a criminal defendant may earn additional presentence credit against his or her sentence for

9

performing assigned labor (§ 4019, subd. (b)), and for complying with applicable rules and regulations of the local facility (§ 4019, subd. (c)). These presentence credits are collectively referred to as conduct credits. (*People v. Dieck* (2009) 46 Cal.4th 934, 939.)

Section 4019 has been amended multiple times. Before January 25, 2010, defendants were entitled to one-for-two conduct credits, which is two days for every four days of actual time served in presentence custody. (Former § 4019, subd. (f), as amended by Stats. 1982, ch. 1234, § 7.) Effective January 25, 2010, the Legislature amended section 4019 to provide that prisoners, with some exceptions, earned one-for-one conduct credits, which is two days of conduct credit for every two days in custody. (Stats. 2009, 3d Ex. Sess. 2009-2010, ch. 28, § 50.) Effective September 28, 2010, the Legislature again amended section 4019. (Stats. 2010, ch. 426, §§ 1, 2, 5.) Subdivisions (b) and (g) restored the one-for-two presentence conduct credit calculation that had been in effect prior to the January 25, 2010, amendment.

Most recently, the Legislature amended section 4019 to provide for up to two days credit for each four-day period of confinement in local custody. (§ 4019, subds.(b) & (c).) This scheme reflects the Legislature's intent that if all days are earned under section 4019, a term of four days will be deemed to have been served for every two days spent in actual custody. (§ 4019, subd. (f).) This version of section 4019 became operative on October 1, 2011. (Stats. 2011, ch. 12, § 35.)

Although numerous appeals have been filed contending that section 4019's current scheme for calculating conduct credits is intended to apply retroactively, i.e., to prisoners awaiting sentencing for crimes committed before the operative date, defendant

10

acknowledges that the statute's language is prospective only.[4] He contends only that prospective application would result in impermissible disparate treatment of similarly situated prison inmates simply based on the dates of their offenses. We disagree.

In *Brown*, *supra*, 54 Cal.4th 314, our Supreme Court addressed contentions that the version of section 4019 effective on January 25, 2010, must be held to apply retroactively, in part because prospective application would violate the equal protection clauses of the state and federal Constitutions. The court stated:[5] "The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, "'[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner.'" [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."' [Citation.] [¶] . . . [T]he important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners *who served time before and after former section*

---

[4] Section 4019, subdivision (h), provides: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

[5] The discussion of *Brown* which follows is excerpted, with minor alterations, from *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1551-1552.

11

*4019 took effect are not similarly situated necessarily follows*." (*Brown*, at pp. 328-329, italics added.)

The Supreme Court rejected the argument that its decision in *People v. Sage* (1980) 26 Cal.3d 498 (*Sage*) required a contrary conclusion. (*Brown*, *supra*, 54 Cal.4th at pp. 329-330.) The version of section 4019 at issue in *Sage* authorized presentence conduct credit for misdemeanants who later served their sentence in county jail, but not for felons who ultimately were sentenced to state prison. The *Sage* court found this unequal treatment violative of equal protection, as it found no "rational basis for, much less a compelling state interest in, denying presentence conduct credit to" felons. (*Sage*, at p. 508.)

*Brown* acknowledged that one practical effect of *Sage* "was to extend presentence conduct credits retroactively to detainees who did not expect to receive them, and whose good behavior therefore could not have been motivated by the prospect of receiving them." (*Brown*, *supra*, 54 Cal.4th at p. 329.) Nevertheless, it declined to read *Sage* in such a way as to foreclose a conclusion "that prisoners serving time before and after incentives are announced are not similarly situated." (*Id.* at p. 330.) *Brown* explained: "The unsigned lead opinion 'by the Court' in *Sage* does not mention the argument that conduct credits, by their nature, must apply prospectively to motivate good behavior. A brief allusion to that argument in a concurring and dissenting opinion [citation] went unacknowledged and unanswered in the lead opinion. As cases are not authority for propositions not considered [citation], we decline to read *Sage* for more than it expressly holds." (*Ibid.*)

12

Finally, *Brown* rejected the notion the case before it was controlled by *In re Kapperman* (1974) 11 Cal.3d 542, the case on which defendant relies in this case. In *Kapperman*, the court held that equal protection required retroactive application of a statute granting credit to felons for time served in local custody before sentencing and commitment to state prison, despite the fact that the statute was expressly prospective. (*Brown*, *supra*, 54 Cal.4th at p. 330.) *Brown* found *Kapperman* distinguishable: "Credit for time served is given without regard to behavior, and thus does not entail the paradoxical consequences of applying retroactively a statute intended to create incentives for good behavior. *Kapperman* does not hold or suggest that prisoners serving time before and after the effective date of a statute authorizing *conduct* credits are similarly situated."**6** (*Ibid*.)

Following *Brown*, the appellate courts of this state have rejected the contention that equal protection principles require the retroactive application of the version of section 4019 effective October 1, 2011. (*People v. Kennedy* (2012) 209 Cal.App.4th 385, 396-397; *People v. Ellis*, *supra*, 207 Cal.App.4th at pp. 1551-1552; see also *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 53-54 [finding prisoners who committed their crimes before and after October 1, 2011, similarly situated but also finding a rational

**6** We note *Brown*, *supra*, 54 Cal.4th at page 322 includes language that supports the conclusion the Supreme Court approved earning conduct credits at two different rates and, thus, the date when a defendant committed an offense is not dispositive. But in *Brown* the Legislature did not expressly declare whether the January 25, 2010, amendment was to apply retroactively or prospectively. (*Id*. at p. 320.) Here, the Legislature did expressly state the current version of section 4019 is to apply prospectively only to defendants who commit their offenses on or after October 1, 2011.

basis for their unequal treatment]; *People v. Verba* (2012) 210 Cal.App.4th 991, 995-997 [same].)  We therefore reject defendant's equal protection challenge, and claim that he is not entitled to additional conduct credits.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:


McKINSTER
       J.


CODRINGTON
       J.