Filed 8/30/24  P. v. Alvarez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARTHUR ALVAREZ II,<br><br>    Defendant and Appellant. | C099867<br><br>(Super. Ct. No. 22CR002912) |

After defendant Arthur Alvarez II pleaded guilty to driving with a blood-alcohol content of 0.08 percent or more, the trial court sentenced him to six years in state prison. On appeal, Alvarez contends that the court erred in refusing to give him custody credit and conduct credit for the time he spent before sentencing on home detention with electronic monitoring.  The People concede the error, and we accept the concession.  We remand the case to the trial court to award custody credit for the time Alvarez was on home detention before sentencing and to calculate and award conduct credit for the same period.

1

BACKGROUND

On October 30, 2022, Alvarez was speeding on the freeway and weaving in and out of his lane. He was stopped by the California Highway Patrol and failed field sobriety tests. Chemical breath tests yielded results of 0.21 percent and 0.23 percent blood-alcohol content.

On December 5, 2022, the People filed a criminal complaint charging Alvarez with driving under the influence (DUI) within 10 years of three prior DUI's, driving with a blood-alcohol content of 0.08 percent or more within 10 years of three prior DUI's, and misdemeanor driving with a suspended license. As to the first two counts, the complaint alleged that Alvarez was driving with a blood-alcohol content of 0.20 percent or more and that he had suffered a prior strike.

On December 15, 2022, the trial court ordered Alvarez released on ankle and alcohol monitoring and under the supervision of the probation department. The court ordered Alvarez not to drive a car or consume alcohol. He was permitted to go directly to and from work but prohibited from otherwise leaving his residence without permission from the probation department.

The court also ordered Alvarez to comply with any terms and conditions set by probation. Those terms and conditions included abiding by "all rules of the Electronic Monitoring Program and the Global Positioning System (GPS) Agreement"; allowing peace officers and other designated persons "warrantless access and search of [his] person, property, vehicle and residence at any time to verify [his] compliance with the program"; and remaining in his residence except when at work or otherwise authorized by a probation officer to leave. Alvarez signed a GPS monitoring agreement, which confirmed that he was "being placed on GPS in order to verify and monitor [his] compliance with the court[']s orders and the terms and conditions of [his] own recognizance release." The agreement further specified that any failure to comply with

2

its provisions could violate the conditions of his release and lead to a warrant for his arrest.

Alvarez subsequently pleaded guilty to driving with a blood-alcohol content of 0.08 percent or more. He admitted five prior DUI convictions and a prior strike. The maximum potential sentence was six years.

The trial court sentenced Alvarez on November 9, 2023. The court denied Alvarez's request to dismiss his prior strike under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. It imposed a three-year sentence for driving with a blood-alcohol content of 0.08 percent or more with three prior DUI offenses and doubled it because of Alvarez's prior strike, for a total sentence of six years in state prison. The court awarded him five days' credit for time served, which included three days of custody credit and two days of conduct credit.

After the court pronounced sentence, Alvarez requested credit for the days he was "on pretrial monitoring with an ankle monitor including conditions and a curfew." The court denied the request.

Alvarez filed a timely notice of appeal stating that his appeal is based on matters that occurred after the plea and that do not affect its validity.

DISCUSSION

Alvarez contends that he should receive custody credit and conduct credit for the time he spent before sentencing on home detention with electronic monitoring, from December 15, 2022, to November 9, 2023. The People concede he is entitled to both forms of credit. We accept the concession.

First, with respect to custody credit, Penal Code section 2900.5, subdivision (a) provides that "[i]n all felony and misdemeanor convictions, either by plea or verdict, . . . all days of custody of the defendant, including . . . days served in home detention pursuant to Section 1203.016 and Section 1203.018, shall be credited upon his

3

or her term of imprisonment . . . ."[1]  Section 1203.016 governs home detention after sentencing, while section 1203.018 "extends the same conditions and privileges to a home detention program prior to sentencing."  (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1088; see also *People v. Yanez* (2019) 42 Cal.App.5th 91, 94 (*Yanez*) [conditions of home detention under sections 1203.016 and 1203.018 are "substantially similar"].)

Under section 1203.018, subdivision (b), which is the provision at issue in this case, a county may "offer a program under which inmates being held in lieu of bail in a county jail or other county correctional facility may participate in an electronic monitoring program," provided specified conditions are satisfied.  The statute allows counties to "prescribe reasonable rules and regulations" under which the program operates, but the program must require the participant to agree in writing to "remain within the interior premises of the participant's residence during the hours designated by the correctional administrator" and "admit any probation officer or other peace officer designated by the correctional administrator into the participant's residence at any time for purposes of verifying the participant's compliance with the conditions of detention." (§ 1203.018, subd. (d)(1), (2).)  Section 1203.018 also provides that "electronic monitoring may include global positioning system devices or other supervising devices for the purpose of helping verify the participant's compliance with the rules and regulations of the electronic monitoring program." (*Id.*, subd. (d)(3).)  In addition, the participant may be taken into custody "if the electronic monitoring or supervising devices are unable for any reason to properly perform their function at the designated place of home detention, if the person fails to remain within the place of home detention as stipulated in the agreement, or if the person for any other reason no longer meets the established criteria under this section."  (*Id.*, subd. (d)(4).)

---

[1]  Undesignated statutory references are to the Penal Code.

4

The parties agree that Alvarez's presentence home detention with electronic monitoring satisfied the requirements of section 1203.018. Consistent with the statute, Alvarez was required to remain at home except when at work and to admit officers into his residence at any time to verify his compliance with the program. He was subject to GPS monitoring and agreed that a failure to abide by the rules and conditions of his GPS agreement could result in a violation of his release conditions and a warrant for his arrest. Because Alvarez participated in a program under the conditions specified in section 1203.018, we accept the People's concession that, under section 2900.5, subdivision (a), Alvarez is entitled to custody credit for the time he spent on home detention before sentencing.

Second, with respect to conduct credits, section 4019 offers inmates in local custody the opportunity to earn credit against their sentences for good behavior. (*People v. Gerson*, *supra*, 80 Cal.App.5th at p. 1091.) The Legislature intended "that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody." (§ 4019, subd. (f).) Section 4019 authorizes conduct credit for several categories of defendants, including "[w]hen a prisoner participates in a program pursuant to Section 1203.016." (§ 4019, subd. (a)(7)). The statute, however, is silent with respect to conduct credits for *presentence* home detention with electronic monitoring under section 1203.018.

In *People v. Yanez*, Division Two of the Court of Appeal for the First Appellate District held that, because defendants are eligible for conduct credit for time on home detention *after* sentencing, it violates equal protection to deny such credit to defendants who spend time on home detention *before* sentencing. (*Yanez*, *supra*, 42 Cal.App.5th at p. 93.) In *People v. Gerson*, *supra*, 80 Cal.App.5th at page 1067, the Fourth Appellate District, Division One agreed with *Yanez*. (*Id.* at p. 1092.)

*Yanez* concluded that our state high court's decision in *People v. Sage* (1980) 26 Cal.3d 498 "control[led] [the] analysis." (*Yanez*, *supra*, 42 Cal.App.5th at pp. 99-

5

100.) *Sage* addressed a statutory scheme under which a felon who was confined in local custody before conviction received no conduct credit for presentence jail time, while a felon who made bail or was released on his or her own recognizance received conduct credit for the full sentence served in prison after conviction. (*Sage*, at p. 507.) In other words, "[o]nly the presentence detainee eventually sentenced to prison, the 'detainee/felon,' [did] not receive conduct credit against his full sentence, because he [wa]s denied conduct credit for his presentence confinement." (*Ibid.*) Our state Supreme Court held that "the distinction between the detainee/felon and the felon who serves no presentence time . . . raises equal protection problems." (*Ibid.*) *Sage* rejected the People's effort to justify the unequal treatment based on the distinct characteristics of pretrial detainees. (*Id.* at pp. 507-508.) The court explained that those rationales applied as well to pretrial detainees eventually convicted of a misdemeanor, yet under the statute those misdemeanor defendants received conduct credit for presentence time in custody. (*Ibid.*) The court thus discerned no "rational basis for, much less a compelling state interest in, denying presentence conduct credit to detainee/felons." (*Id.* at p. 508.)

*Yanez* reasoned that, "[a]s in *Sage*, we can conceive of no legitimate, much less a compelling, reason for treating people participating in an electronic monitoring program on home detention while awaiting trial and sentencing differently for purposes of conduct credit than someone serving a sentence in an electronic monitoring program." (*Yanez*, *supra*, 42 Cal.App.5th at p. 100.) Accordingly, the court held that denying Yanez conduct credit for time spent on home detention before sentencing violated the constitutional equal protection guarantee. (*Id.* at p. 93.)

In this case, the People agree with *Yanez* and offer no basis for distinguishing between those on home detention with electronic monitoring before sentencing and those on home detention with electronic monitoring after imposition of sentence. They argue that the case should be remanded to allow the trial court to award Alvarez conduct credit

for the time he spent on home detention with electronic monitoring before his sentencing. In light of *Sage*, *Yanez*, and *Gerson*, we will accept the People's concession.

DISPOSITION

The trial court is directed to award Alvarez custody credit for the time he spent on home detention with electronic monitoring under section 1203.018. (§ 2900.5, subd. (a).) The trial court is further directed to calculate and award any conduct credit to which Alvarez is entitled under section 4019, consistent with the above opinion. The trial court clerk shall amend the abstract of judgment accordingly and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.



                                         /s/_____
                                         FEINBERG, J.


We concur:


 /s/_____
HULL, Acting P. J.


 /s/_____
KRAUSE, J.