Filed 8/9/22  P. v. Hawkins CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CHRISTOPHER HAWKINS, Defendant and Appellant. | D079457 (Super. Ct. No. SCD288450) |

APPEAL from a judgment of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Remanded with instructions.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Acting Assistant Attorney General, Heather B. Arambarri and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

At the time Christopher Hawkins was confined to a *state hospital* for treatment to restore his competence, he was not entitled to earn presentence conduct credits, but others receiving the same treatment in a *county jail facility* could earn such credits under then-existing Penal Code section 4019.[1] In October 2021, while this appeal was pending, the Legislature enacted Senate Bill No. 317 (2021-2022 Reg. Sess.) (Senate Bill 317) to amend section 4019 to eliminate that disparity and "ensure[ ] incompetent defendants are eligible for the same . . . conduct [credit] as their competent counterparts, while receiving treatment in *any* treatment facility," including a state hospital. (Assem. Com. on Appropriations, Rep. on Sen. Bill 317, as amended July 12, 2021, p. 2, italics added.) Here, we conclude Senate Bill 317 does not apply retroactively under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). But as a matter of equal protection, Hawkins is entitled to conduct credit for time confined at the state hospital receiving competency treatment, like other detainees receiving the same treatment in a county jail facility under then-existing section 4019. The matter is remanded to the trial court with instructions to award Hawkins 48 additional conduct credits pursuant to section 4019 and to amend the abstract of judgment accordingly.

FACTUAL AND PROCEDURAL BACKGROUND

In a racist tirade, Hawkins threatened to kill a family of four, punched the father in the face (breaking his glasses), and struck the mother in her chest when she pleaded for him to stop. He was arrested on August 24, 2019,

---

[1] All further undesignated statutory references are to the Penal Code.

2

detained in county jail, and charged with four counts of criminal threats (§ 422) and two counts of misdemeanor battery (§ 242).[2]

On September 9, 2019, criminal proceedings were suspended pursuant to section 1368 and Hawkins was subsequently found incompetent to stand trial. He was committed to Patton State Hospital (Patton) to undergo treatment for restoration of competency on January 10, 2020. He remained there until February 26, confined for a total of 48 days.[3] Hawkins returned to county jail and was found competent to stand trial.

On June 28, 2021, a jury convicted Hawkins as charged. On July 26, the trial court sentenced Hawkins to a prison term of 3 years and 8 months. The court awarded Hawkins a total of 1,357 days of custody credit against his sentence, which included 703 days of actual time credit and 654 days of conduct credit pursuant to section 4019. He received actual time credit for the 48 days he was confined at Patton, but he was not awarded conduct credit for that time.[4] Because his total pre-confinement credits satisfied his

---

[2] The District Attorney dismissed and refiled the case in December 2020. The record on appeal does not contain the earlier dismissed case. We derive many of the procedural facts from the Probation Officer's Report prepared for sentencing, filed July 26, 2021.

[3] Although there is no dispute by the parties that Hawkins spent 48 days at Patton for competency restoration treatment, we note the only record we have of these facts is the Probation Officer's Report.

[4] In the Probation Officer's Report, probation calculated Hawkins' presentence credits and stated he was "not entitled to [conduct] credits while in Patton State Hospital" pursuant to *People v. Waterman* (1986) 42 Cal.3d 565 (*Waterman*). We discuss *Waterman, post*.

sentence, Hawkins was ordered released at sentencing and to report for parole supervision.[5]

Hawkins timely appealed on September 8, 2021, challenging only the trial court's failure to award him 48 days conduct credit for time spent at the state hospital.

## DISCUSSION

### I.

*Legislative Amendments to Section 4019*

Section 4019 offers defendants held in local custody or other specified settings the opportunity to earn presentence credit against their sentences for good behavior and work performed, commonly referred to as "conduct credits." (See § 4019, subds. (a)–(c).) "Conduct credits encourage prisoners to conform to prison regulations, to refrain from criminal and assaultive conduct, and to participate in work and other rehabilitative activities." (*People v. Brown* (2012) 54 Cal.4th 314, 317 (*Brown*).) At the relevant time here, a detainee could earn one day for satisfactory performance of assigned labor and one day for good behavior for every four-day period of confinement (§ 4019, subds. (b)–(c)), such that "a term of four days will be deemed to have been served for every two days spent in actual custody" (*id.*, subd. (f)). Section 4019 specifies the categories of detainees who are eligible to earn conduct credits. Over time, the Legislature has amended the statute on several occasions to expand the categories of eligibility.

---

[5] This fact does not render the issue presented in the appeal moot. Any credit Hawkins should have been given can be applied against his parole period. (§ 1170, subd. (a)(3); see *In re Strick* (1983) 148 Cal.App.3d 906, 910, fn. 1; *In re Sosa* (1980) 102 Cal.App.3d 1002, 1005–1006; *id.* at p. 1005 ["Section 1170 explicitly declares that presentence credit applies against both the imprisonment and the parole portion of the sentence."].)

In the past, defendants deemed incompetent to stand trial (IST defendants) were treated in state hospitals or other treatment facilities, "and were not statutorily eligible for conduct credit." (*People v. Yang* (2022) 78 Cal.App.5th 120, 125 (*Yang*), citing *Waterman*, *supra*, 42 Cal.3d at pp. 568–571; *Waterman*, at p. 569 ["The criminal-incompetence statute does not expressly allow such conduct credit."].) In *Waterman*, the California Supreme Court rejected an equal protection challenge to the denial of section 4019 credits to individuals undergoing treatment for competency restoration. (*Waterman*, at pp. 569, 571, fn. 4.) The *Waterman* court reasoned that "[t]he goal of treatment for incompetence seems particularly inconsistent with an incentive-credit system during therapy. The purpose of confinement is to restore the mental ability to stand trial" and "that goal would be hindered if mere institutional good behavior and participation automatically reduced the therapy period." (*Id.* at p. 570.) Consequently, the *Waterman* court held "[b]ecause pretrial confinement for treatment of incompetence is so different from other forms of *pretrial* detention, . . . equal protection principles do not require that [detainees] receive, while confined for treatment, the benefit of the limited work-and-conduct credit system available to persons confined in jail prior to trial." (*Id.* at p. 571, fn. 4.) "This remained the state of the law for many years," as our colleagues in the First Appellate District noted. (*Yang*, at p. 126.)

"In 2007, the statutory landscape began to change with the enactment of section 1369.1, providing that a county jail could be a 'treatment facility' within the context of section 1367 et seq. for the sole purpose of administering antipsychotic medication to IST defendants. (Stats. 2007, ch. 556, § 3.) Additional legislation in 2012 provided for treatment of IST defendants in county jails without the limitation pertaining to administering

5

antipsychotic medication. (§ 1369.1, as amended by Stats. 2012, ch. 24, § 25.) In 2017, the Legislature gave the State Department of State Hospitals jurisdiction over any county jail treatment facility under contract to provide competency restoration services. (Welf. & Inst. Code, § 4100, subd. (g), added by Stats. 2017, ch. 17, § 61.)"[6] (*Yang*, *supra*, 78 Cal.App.5th at p. 126.)

In 2018, the Legislature enacted Senate Bill No. 1187 (2017–2018 Reg. Sess.) (Senate Bill 1187), which "rejected in part [the] view" of the *Waterman* court that the goal of treatment for incompetence is inconsistent with an incentive-credit system during therapy. (*People v. Orellana* (2022) 74 Cal.App.5th 319, 332 (*Orellana*).) Senate Bill 1187 became effective January 1, 2019, more than a year before Hawkins was committed to Patton. It "modif[ied] the statutory framework governing conduct credit eligibility during incompetency treatment by amending sections 1375.5 and 4019 to authorize conduct credits for persons receiving treatment in county jail facilities. Section 1375.5, as part of the statutory scheme governing mental competence of a defendant to stand trial, addresses the issue of credit for time spent by a defendant in a hospital or other facility due to a commitment for mental incompetence. As amended, section 1375.5, subdivision (c) states that '[a] person subject to this chapter shall receive credits pursuant to [s]ection 4019 for all time during which he or she is confined in a county jail and for which he or she is otherwise eligible.' (§ 1375.5, subds. (a), (c), as

---

[6] Section 1369.1 was repealed by Senate Bill No. 184 (2021–2022 Reg. Sess.), an omnibus health trailer bill, effective June 30, 2022. (Stats. 2022, ch. 47, § 42, effective June 30, 2022.) Section 4019 was further amended by Senate Bill No. 184, operative January 1, 2023, to remove the reference to now-repealed section 1369.1, but it will continue to provide conduct credits to a detainee confined in a county jail treatment facility. (Stats. 2022, ch. 47, § 50, eff. June 30, 2022, operative Jan. 1, 2023.)

6

amended by Stats. 2018, ch. 1008, § 4.)" (*Orellana*, at pp. 332–333.) The amendment to section 4019 "matched" the changes to section 1375.5 (*Orellana*, at p. 333), by adding a new subdivision (a)(8) to provide that IST defendants are eligible for conduct credit while "confined in or committed to a county jail treatment facility" for competency treatment pursuant to section 1367 et seq. (former § 4019, subd. (a)(8), as amended by Stats. 2018, ch. 1008, § 5, effective Jan. 1, 2019, repealed Jan. 1, 2021).

"Senate Bill 1187 was enacted to ensure that IST defendants being held and treated in county jail would be entitled to earn conduct credits just as other jail inmates. (Assem. Com. on Pub. Safety, Rep. on Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 5.) Although legislative analyses reflected the Legislature's express awareness that IST defendants in a state hospital were not statutorily or constitutionally entitled to conduct credit under section 4019, the analysis disclosed no explanation why the Legislature—at that point—declined to similarly extend the availability of conduct credit to such defendants." (*Yang*, *supra*, 78 Cal.App.5th at pp. 126–127.)

In October 2021, the Legislature closed that gap. It enacted Senate Bill 317 to further amend section 4019, subdivision (a)(8), "so that IST defendants receiving competency treatment in a state hospital could also receive conduct credits. (Stats. 2021, ch. 599, § 3 (effective Jan. 1, 2022).) The legislative history indicates the bill was meant to 'ensure[ ] incompetent defendants are eligible for the same time served credit for good conduct as their competent counterparts, while receiving treatment *in any treatment facility or as an outpatient, not just . . . county jail treatment*.' (Assem. Com. on Appropriations, Rep. on Sen. Bill No. 317 (2021–2022 Reg. Sess.) as amended July 12, 2021, p. 2.)" (*Yang*, *supra*, 78 Cal.App.5th at p. 127, italics added.)

7

"The plain meaning of [Senate Bill 317] is that, as of January 1, 2022, defendants undergoing treatment for incompetence in a state hospital are eligible for section 4019 conduct credit on the same terms as those confined to county jails." (*Orellana, supra*, 74 Cal.App.5th at p. 333.) Senate Bill 317 became effective while Hawkins' appeal was pending in this court, but after he had been restored to competence and completed his sentence.

Based on these legislative changes, Hawkins contends he is entitled to conduct credit for the 48 days he was confined at Patton for competency treatment, on two grounds: First, he argues Senate Bill 317 must apply retroactively to him under the *Estrada* rule, as set forth in *Estrada, supra*, 63 Cal.2d at pages 742 through 745. Second, if it does not apply retroactively, equal protection principles nevertheless require that he be afforded the same opportunity for conduct credit that Senate Bill 1187 extended to IST defendants receiving competency treatment in a county jail facility.

## II.

### *Senate Bill 317 Does Not Apply Retroactively Under* Estrada

Hawkins contends Senate Bill 317 applies retroactively to him under *Estrada* because it is an ameliorative change to the criminal law that became effective before judgment in his case became final. We disagree. Like the courts in *Yang* and *Orellana*, we conclude that the California Supreme Court's decision in *Brown, supra*, 54 Cal.4th at page 325 forecloses retroactive application of the new law under *Estrada*. (See *Yang, supra*, 78 Cal.App.5th at pp. 127–128; *Orellana, supra*, 74 Cal.App.5th at pp. 335–336.)

Under the *Estrada* rule, we presume, absent evidence to the contrary, that statutes lessening punishment for criminal conduct apply retroactively to all defendants whose sentences are not final on the statute's operative date. (*Brown, supra*, 54 Cal.4th at p. 323; *Estrada, supra*, 63 Cal.2d at

8

pp. 742–745.)  In *Brown*, our high court considered whether "a more generous but ultimately short-lived 2009 amendment to section 4019 applied retroactively" under *Estrada*.  (*Yang*, *supra*, 78 Cal.App.5th at p. 127; see *Brown*, at pp. 323–328.)  The *Brown* court concluded there was "*no justification* for applying the rule of *Estrada*" to a statutory amendment that increased the rate at which detainees may earn conduct credits.  (*Brown*, at p. 328, some italics added; *id*. at pp. 325–328.)  It explained "the rule and logic of *Estrada* is specifically directed to a statute that represents ' "a legislative mitigation of the *penalty for a particular crime*" ' (*Estrada*, at p. 745, italics added) because such a law supports the inference that the Legislature would prefer to impose the new, shorter penalty rather than to ' "satisfy a desire for vengeance" ' (*ibid*.)."  (*Brown*, at p. 325.)  But "[t]he same logic does not inform our understanding of a law that rewards good behavior in prison," because such a law "addresses *future conduct* in a custodial setting by providing increased incentives for good behavior."  (*Ibid*.)

We are required to follow *Brown*, which forecloses Hawkins' claim that Senate Bill 317 applies retroactively under *Estrada*.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see *Yang*, *supra*, 78 Cal.App.5th at pp. 127–128; *Orellana*, *supra*, 74 Cal.App.5th at pp. 335–336.)  As in *Brown*, the recent amendments to section 4019 do not include an express retroactivity provision.  They do not mitigate or lessen punishment for a particular crime, but rather allow the accrual of conduct credits by a group previously excluded from its provision.  (See *Orellana*, at p. 336.)  And there is nothing in the legislative history to demonstrate a " ' "clear and unavoidable implication" ' " the Legislature intended the expanded categories of conduct credit eligibility to operate retroactively.  (*Brown*, *supra,* 54 Cal.4th at p. 319, citing *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188,

9

1208 [requiring " ' "express language or [a] clear and unavoidable implication [to] negative[ ] the presumption" ' " against retroactivity under Civ. Code, § 3]; accord *Orellana*, at p. 336.)

Hawkins asserts the rationale of Senate Bill 317 distinguishes his case from *Brown*. He argues *Brown* focused on an amendment to section 4019 that increased the rate of conduct credit award, "such that the Court could analyze the question before it as one of increased incentive for *future* good behavior." The legislative history of Senate Bill 317, he argues, demonstrates it was intended to "address[ ] the range and comprehensiveness of treatment options and the avoidance of disparity in sentence length between persons receiving different treatment options." Because Senate Bill 317 was intended to "correct the unfairness" of the prior law, he argues it "carries a much stronger inference of retroactivity than the legislation at issue in *Brown*." He asserts Senate Bill 317 is "closer" to the legislation considered by the California Supreme Court in *People v. Sage* (1980) 26 Cal.3d 498 (*Sage*) and *In re Kapperman* (1974) 11 Cal.3d 542 (*Kapperman*). These same arguments were rejected by the court in *Orellana*, and we see no reason why Hawkins would obtain a different result here.

As the *Orellana* court noted, the *Brown* court "squarely rejected the argument advanced here . . . that courts should infer legislative intent of retroactive application from a statute that equalizes credits among different groups of defendants." (*Orellana, supra*, 74 Cal.App.5th at p. 335, citing *Brown, supra*, 54 Cal.4th at pp. 325–326 & fn. 15.) In rejecting the defendant's claim that *Estrada* "should be understood to apply more broadly to any statute that reduces punishment in any manner," the *Brown* court accepted the notion that "a convicted prisoner who is released a day early is punished a day less." (*Brown*, at p. 325.) But it did not accept the

10

defendant's "suggest[ion] the Legislature's desire to reduce punishment through former section 4019 can be inferred from its intent to equalize the credit-earning ability of state and local prisoners." (*Id.* at p. 325, fn. 15.)  The *Brown* court explained, "to recognize the Legislature wished to equalize credits does not, by itself, provide a logical basis for inferring the Legislature wished to do so *retroactively.*" (*Ibid.*)  Further still, the *Brown* court rejected the comparison to cases involving *custody* credit, including *Kapperman,* because those could "properly be distinguished as irrelevant" to determining the retroactivity of *conduct* credits.[7]  (*Brown*, at p. 326.)

Hawkins argues courts have applied the *Estrada* inference of retroactivity "in a wide variety of other circumstances," not just to changes in the law that reduce jail and prison sentences.  Although it is true "the California Supreme Court in recent years has expanded the scope of *Estrada* beyond the somewhat limited terrain described in *Brown*," (*Orellana, supra,* 74 Cal.App.5th at p. 335), *Brown*'s holding that there is no *Estrada* inference of retroactivity from a statutory amendment to section 4019 remains "controlling here." (*Orellana,* at p. 336; see *People v. Esquivel* (2021) 11 Cal.5th 671, 676 [under *Brown*, a "change to accrual of good behavior credits

---

[7]  *Kapperman* and *Sage* are also not helpful to our discussion of *Estrada* retroactivity because both cases were decided on equal protection grounds. (See *Sage, supra,* 26 Cal.3d at pp. 504, 506–508 [concluding a former version of section 4019 that authorized presentence conduct credits for misdemeanants who ultimately served their sentences in county jail but not for felons confined in jail awaiting trial violated equal protection]; *Kapperman, supra,* 11 Cal.3d at pp. 544–545 [concluding an expressly prospective statute that granted felons credit for time served in local custody before sentencing and commitment to state prison must apply retroactively to eliminate the discriminatory classification and avoid equal protection concerns].)

incentivized future conduct rather than altering the penalty for a crime, and thus did not ameliorate punishment in the relevant sense"].)  As the *Orellana* court summed it up: "Section 4019, at issue here, operates in the same manner it did when the California Supreme Court examined it in *Brown*. There, . . . the [high] court concluded that because the amendment to section 4019 addressed forward-looking conduct incentives, it would not presume the Legislature intended the amendment to apply retroactively and therefore *Estrada* did not apply.  Because the *Brown* analysis squarely applies here, we reach the same conclusion.  We hold that Senate Bill 317 does not apply retroactively to [Hawkins,] who had completed his restoration to competence in the state hospital long before enactment of this legislation." (*Orellana*, at p. 338; accord *Yang, supra*, 78 Cal.App.5th at p. 128.)

III.

*Hawkins Is Entitled to Conduct Credit as a Matter of Equal Protection*

Even if Senate Bill 317 does not apply retroactively, Hawkins contends equal protection principles require that he be afforded the same opportunity for conduct credit that Senate Bill 1187 extended to IST defendants receiving competency treatment in a county jail facility.  On a similar equal protection claim, the courts in *Yang* and *Orellana* reached different conclusions.  The *Orellana* court concluded *Brown*'s constitutional analysis of the forward-looking nature of the incentive structure of section 4019 "effectively precludes the court from deeming two groups similarly situated for purposes of earning conduct credits when the time in custody preceded the availability of incentive based credits." (*Orellana, supra*, 74 Cal.App.5th at pp. 341–342.) The *Yang* court disagreed with this reading of *Brown*, and instead concluded IST defendants confined in a state hospital for competency treatment are similarly situated to their counterparts receiving treatment in a jail facility,

12

and their disparate treatment under section 4019 as amended by Senate Bill 1187 violated equal protection guarantees. (*Yang, supra*, 78 Cal.App.5th at pp. 129–131.) We agree with *Yang* and reach the same conclusion here.

A.    *Similarly Situated*

We analyze the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and article I, section 7, subdivision (a) of the California Constitution in "a similar fashion," as they are "substantially equivalent." (*People v. Leng* (1999) 71 Cal.App.4th 1, 11.) "The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally." (*Brown, supra*, 54 Cal.4th at p. 328.) The threshold question to an equal protection claim is "whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202 (*McKee*).)

" ' The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' " (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) "This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' " (*Ibid.*) Equal protection does not require absolute equality in classification. (*People v. Shipman* (1965) 62 Cal.2d 226, 232.) "There is always some difference between the two groups which a law treats in an unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups." (*People v. Nguyen* (1997) 54 Cal.App.4th 705, 714.)

13

Hawkins was determined incompetent to stand trial in November 2019 and ordered committed to a state hospital to receive treatment to restore his mental competency. He was subsequently committed to Patton in January 2020. At the time he was found mentally incompetent, the court could also have ordered Hawkins committed to any other authorized treatment facility, including a county jail treatment facility, for competency restoration. (See § 1370, subd. (a)(1)(B)(i).[8]) At this time, section 4019 as amended by Senate Bill 1187 had been in effect for well over a year. That version of section 4019, in effect at the time of Hawkins' commitment, entitled IST defendants the opportunity to earn conduct credit, but only if confined or committed to a county jail treatment facility. (Former § 4019, subd. (a)(8).) It is these two groups—IST defendants receiving competency treatment at a state hospital and IST defendants receiving competency treatment at a county jail facility, *postdating* Senate Bill 1187's effective date of January 1, 2019—that Hawkins contends are similarly situated but treated unequally, without justification.

We agree with the *Yang* court that "the two groups are similarly situated for purposes of evaluating the conduct credit disparity created by

_____

[8]    Section 1370, subdivision (a)(1)(B)(i) provides: "The court shall order that the mentally incompetent defendant be delivered by the sheriff to a State Department of State Hospitals facility *as defined in Section 4100 of the Welfare and Institutions Code*, as directed by the State Department of State Hospitals, or to any other available public or private treatment facility, including a community-based residential treatment system . . . , that will promote the defendant's speedy restoration to mental competence, or placed on outpatient status[.]" (Italics added.) Welfare and Institutions Code section 4100, subdivisions (a) through (e) specify the five state hospitals, including Patton, and subdivision (g) specifies "[a] county jail treatment facility under contract with the State Department of State Hospitals to provide competency restoration services."

Senate Bill 1187." (*Yang, supra*, 78 Cal.App.5th at p. 129.) As the *Yang* court explained: "One purpose of the bill was to '[a]uthorize[ ] a person committed to a facility pending the restoration of mental competence to earn credits,' though the bill ultimately only authorized defendants treated in jail facilities and not in state hospitals to such credit. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1187 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 3.) But both groups of defendants are subject to the same IST standards and procedures. (§ 1367 et seq.) Moreover, both groups are committed for treatment aimed at restoration of competency so that a trial may proceed. The only apparent difference between them is the location where the defendant receives competency treatment, which appears dependent on multiple factors, such as whether a particular facility has the physical space and resources to accept the commitment, the medical needs of the defendant, the security risk the defendant poses, and whether the committing county can reasonably and timely transport the individual to the proposed facility. (Cal. Code Regs., tit. 9, §§ 4710–4717; Welf. & Inst. Code, §§ 7228, 7230.) As such, defendants receiving competency treatment in a state hospital are sufficiently similar to defendants receiving competency treatment in county jail ' " 'to merit application of some level of scrutiny to determine whether distinctions between the two groups justify the unequal treatment.' " ' " (*Yang*, at pp. 127–128.)

The court in *Orellana* rejected a similar equal protection claim. There, our colleagues in the Sixth Appellate District concluded *Brown*'s constitutional analysis of the forward-looking nature of the incentive structure of section 4019 "effectively precludes the court from deeming two groups similarly situated for purposes of earning conduct credits *when the*

15

*time in custody preceded the availability of incentive based credits.*"
(*Orellana, supra,* 74 Cal.App.5th at pp. 341–342, italics added.) The court
focused on the *Brown* court's observation that " 'the important correctional
purposes of a statute authorizing incentives for good behavior [citation] are
not served by rewarding prisoners who served time before the incentives took
effect and thus could not have modified their behavior in response. That
prisoners who served time before and after former section 4019 took effect are
not similarly situated necessarily follows.' " (*Orellana*, at p. 340, quoting
*Brown, supra,* 54 Cal.4th at pp. 328–329.) From this the court determined
"*Brown* held that individuals who had already been sentenced were not
similarly situated to those who were in custody *after the new legislation
entered into force.*" (*Orellana,* at pp. 339–340, italics added.) It then
concluded the defendant "is not similarly situated *to inmates to whom Senate
Bill 317 statutorily applies*" and thus denial of conduct credits to him does not
violate equal protection. (*Id.* at p. 342, italics added.)

But unlike the defendant in *Brown*, Hawkins does not contend that it is
the *prospective* application of the statutory amendment at issue, Senate Bill
317, that violates equal protection guarantees. (See *Brown, supra,* 54 Cal.4th
at p. 328 ["Defendant contends that to apply former section 4019
prospectively violates the equal protection clauses of the state and federal
Constitutions."].) Hawkins does not focus on any temporal distinction
between IST defendants who received competency treatment in state
hospitals *before and after* passage of Senate Bill 317 extending conduct
credits to that group. He points to Senate Bill 317 not to define the groups
for equal protection comparison, but to highlight the Legislature's own
acknowledgment of the " 'perverse outcome' " *under Senate Bill 1187* and the
lack of any compelling state interest or a rational basis for treating him

16

differently than his counterparts in county jails. Thus, like in *Yang*, he challenges "the disparate treatment of two groups of IST defendants whose confinement for competency treatment *postdated* a statutory amendment that authorizes conduct credits only for those committed to a jail facility but not for those committed to a state hospital." (*Yang, supra*, 78 Cal.App.5th at pp. 130–131, italics added.) Although *Orellana* acknowledged this critical distinction in the comparison framework, we agree with *Yang* that it does not persuasively resolve it. (*Yang,* at p. 131; see *Orellana, supra*, 74 Cal.App.5th at pp. 340–341.)

We also agree with *Yang* that viewing "*Brown* as compelling the conclusion that IST defendants receiving competency treatment in a jail facility and IST defendants receiving competency treatment in a state hospital are not similarly situated because the former group was incentivized to earn conduct credit after Senate Bill 1187's enactment while the latter group was not" is "read[ing] *Brown* too broadly." (*Yang, supra*, 78 Cal.App.5th at p. 131.) It is illogical to say that IST defendants confined in a state hospital are not similarly situated to those confined in a county jail treatment facility on the basis they could not have been incentivized to earn conduct credit because the law did not apply to them. A defendant's ability to state an equal protection claim cannot be dependent on the Legislature's own choice of classification when it is that very classification that is being challenged as unjustified. (See *id.* at pp. 132–133.)

Similarly relying on *Brown*'s analysis of the forward-looking nature of the incentive structure of section 4019, the Attorney General asserts that "even assuming the two groups are similarly situated going forward, it does not follow that the two groups were similarly situated at the time the law was passed." And here, "[t]he statutory amendments under section 4019

17

could not incentivize [Hawkins] to behave while at Patton State Hospital *once he was no longer interned there*." This assertion overlooks that at the time Hawkins was committed to Patton, section 4019 allowed IST defendants to earn conduct credit if they were receiving treatment in a county jail facility. Again, the only reason Hawkins was not similarly incentivized to earn conduct credits was because of the Legislature's choice to treat him differently than detainees confined in a county jail facility. Moreover, since conduct credits are calculated at the time of sentence, when else could Hawkins have brought an equal protection challenge but *after* he had been restored to competency, released from Patton, criminal proceedings have been reinstated, and he is sentenced? Based on the Attorney General's logic, a defendant in Hawkins' position could never invoke equal protection, even though his behavior might otherwise have qualified him for conduct credit under existing legislation. Like the *Yang* court, we cannot agree with this conclusion. (*Yang, supra*, 78 Cal.App.5th at p. 131.)

We conclude Hawkins has met the threshold of demonstrating the two groups of IST defendants "are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*McKee, supra*, 47 Cal.4th at p. 1202.)

B.      *Standard of Scrutiny*

Once it is determined that two groups are similarly situated for the purposes of a statute, we ask whether disparate treatment of the groups is justified. (*McKee, supra*, 47 Cal.4th at p. 1207.) In considering whether a state law violates the equal protection clauses of the state and federal Constitutions, " 'we apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. [Citations.] Classifications

18

based on race or national origin . . . and classifications affecting fundamental rights . . . are given the most exacting scrutiny.  Between these extremes of rational basis review and strict scrutiny lies a level of intermediate scrutiny, which generally has been applied to discriminatory classifications based on sex or illegitimacy.' " (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836–837.)

Under strict scrutiny, " '*the state* bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose.' " (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 17.)  But "where the law challenged neither draws a suspect classification nor burdens fundamental rights, . . . [w]e find a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose." (*People v. Chatman* (2018) 4 Cal.5th 277, 288–289.)

Hawkins contends there is no compelling state interest, or even a rational basis, for the disparate treatment under section 4019 as amended by Senate Bill 1187, but he does not advocate which standard of scrutiny this court must apply.  The Attorney General has not attempted to justify the disparate treatment, so does not even address which standard of scrutiny should apply.

"[C]ourts have reached different conclusions about which test applies to incongruities resulting from statutes involving time credits[.]" (*People v. Applin* (1995) 40 Cal.App.4th 404, 409.)  A number of courts have applied strict scrutiny, also referred to as the compelling state interest test, to evaluate disparities in the law concerning credit allowances. (See e.g., *People v. Saffell* (1979) 25 Cal.3d 223, 228, 233, 235 (*Saffell*); *Sage, supra*, 26 Cal.3d at pp. 506–508 & fn. 6; *People v. Caruso* (1984) 161

19

Cal.App.3d 13, 16–18; *In re Huffman* (1986) 42 Cal.3d 552, 559–561; see also *Waterman, supra,* 42 Cal.3d at p. 569.)  But other courts have applied rational basis review.  (See e.g., *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 53, 55; *In re Bender* (1983) 149 Cal.App.3d 380, 388–389.)

In *Yang*, the court applied strict scrutiny to section 4019 as amended by Senate Bill 1187 because conduct credit eligibility impacts the length of one's incarceration and thus, personal liberty.  (*Yang, supra,* 78 Cal.App.5th at pp. 131–136.)  The court thoroughly analyzed the standard of scrutiny applied to statutes involving time credits in prior cases, and was persuaded the Supreme Court's decisions in *Saffell, Sage,* and *Waterman* compelled strict scrutiny.  (*Ibid.*)  We need not repeat the same analyses undertaken by the *Yang* court because we conclude the disparate treatment of IST defendants in state hospitals under section 4019 as amended by Senate Bill 1187 cannot survive even rational basis review.

Under rational basis review, "the legislation survives constitutional scrutiny as long as there is ' "any reasonably conceivable state of facts that could provide a rational basis for the classification." ' [Citation.]  This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve.  Nor must the underlying rationale be empirically substantiated. [Citation.]  While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice [citation].  It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74–75.)

Here, the Legislature did articulate the purpose they sought to achieve in enacting Senate Bill 317.  The Legislature acknowledged " '[e]xisting law

provides that incompetent defendants can only receive time served credits for good conduct when in a county jail treatment facility.' " (Sen. 3d Reading Analysis of Sen. Bill 317, as amended Sept. 1, 2021, p. 1.) Arguments in support of Senate Bill 317 included that:

> " 'Under current law, defendants earn pre-trial custody credits against any jail or prison sentence they ultimately receive. However, defendants who are deemed incompetent to stand trial only receive good time/work time credits for time spent in a jail setting and not for time spent involuntarily detained in a hospital. As a result, these defendants receive only half as much custody credit as other defendants. The *perverse outcome* is that defendants who suffer from mental health challenges, once restored to competence, are forced to serve longer sentences than competent defendants charged with the same offense.' "

(*Id.* at p. 2, italics added.) No arguments in opposition of Senate Bill 317 were recorded. (*Ibid.*) Senate Bill 317 was thus enacted to " 'ensure[ ] incompetent defendants are eligible for the same time served credit for good conduct as their competent counterparts, while receiving treatment in any treatment facility or as an outpatient, not just a county jail treatment.' " (*Ibid.*)

In light of the Legislature's determination that it is " 'perverse' " to give conduct credits to IST defendants in a county jail facility (*and* competent defendants), but not IST defendants in a state hospital (Sen. 3d Reading Analysis of Sen. Bill 317, as amended Sept. 1, 2021, p. 2), we cannot discern a rational basis for the disparate treatment of IST defendants confined in a state hospital under section 4019 as amended by Senate Bill 1187. We therefore conclude Hawkins is entitled to conduct credit for the time he spent receiving competency treatment at Patton since the effective date of Senate Bill 1187.

## DISPOSITION

The matter is remanded to the trial court with instructions to award Hawkins 48 additional conduct credits pursuant to section 4019 and to amend the abstract of judgment accordingly.

DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


AARON, J.